*JOHN S. LOCKHART v. COOPER & LUNDSFORD.

*Insurance.*

An insurance policy was issued to defendant warehousemen on leaf tobacco, by them "owned, or held in trust, or on commission, or sold and not delivered." The plaintiff bought twenty-five particular hogsheads of tobacco, removed five, and suffered the others to remain in the warehouse, and the same with the building was destroyed by fire, as was also a considerable quantity of tobacco owned by defendants themselves, exceeding in value the whole amount of the insurance ; *Held,* that the goods had been sold and delivered, and that plaintiff is not entitled to recover any portion of the insurance money.

---

*RUFFIN, J., did not sit on the hearing of this case.

CIVIL ACTION tried at Fall Term, 1882, of ORANGE Superior Court, before *Shipp, J.*

On November 8th, 1880, the plaintiff bought of the defendants, Cooper & Lunsford, (who were conducting at Durham, N. C., the business of storing and selling leaf tobacco, and had a warehouse used for that purpose) twenty-five particular hogsheads of such tobacco then in their warehouse, at the price of $2,538.38, of which number five were removed and the others suffered to remain.

At the same time the plaintiff gave an acceptance payable on time for the purchase money, saying that in a few days he would remove the others. Subsequently he was asked to take them from the warehouse and he promised the defendants that he would do so, but finding that the tobacco had been placed in the basement of the warehouse and was less in the defendants' way, to which they made no objection, it was allowed to remain, until most of the tobacco was afterwards destroyed with the building by a fire which occurred on December 1st, of the same year.

Previous to the burning, the defendants' book-keeper informed him that the tobacco was covered by insurance policies taken out by the defendants.

The defendants had effected several open or floating policies of insurance against loss by fire with the several companies, who are associated with them in the action as co-defendants, in the aggregate sum of $8,000 on leaf tobacco, by them " *owned or held in trust, or on commission, or sold and not delivered,*" and these policies were in force when the property was burned.

The defendants themselves owned and had in their warehouse, at the same time, leaf tobacco which was consumed, exceeding in value by $2,000 the whole amount of the insurance, and they collected what was due from the companies and applied it to their own indemnity, refusing, (as do the insurance companies) to pay any thing to the plaintiff,

and denying his claim to any part of the insurance money under the terms of the policies. The draft or acceptance of the plaintiff went to protest, and the defendants who had endorsed it advanced the money due thereon to the holder, and were afterwards reimbursed by the plaintiff.

These are the undenied facts alleged in the pleadings and findings of the jury, as presented in the transcript for review of the ruling of the court as to their legal effect in interpreting the policies.

The court held that the tobacco had been sold and delivered, and was not then held in trust, within the meaning of the contract of insurance and under its protection, and gave judgment in favor of the companies for their costs, and that the defendants recover their counter claim. From this judgment the plaintiff appeals.

*Messrs. Merrimon & W. W. Fuller*, for plaintiff.
*Mr. J. W. Graham*, for defendants.

SMITH, C. J. The only question we are called on to decide is whether the plaintiff's tobacco upon the facts stated was held by the defendants Cooper & Lunsford at the time of the fire, " in trust, or sold and not delivered," in the sense of the contract of insurance, for the plaintiff, and he is entitled to share with them in the fund collected from the companies.

An insurance against loss by fire, effected by one who has no interest in the property insured, is but a wagering contract not sanctioned by the common law, and void. The interest must exist at the time the policy is issued or the contract entered into, as well as at the time when the loss occurs. *Saddlers Co.* v. *Babcock*, 2 Atk., 554. It is not necessary, however, that the insured shall have an absolute and unqualified property in the thing insured. A mortgagee, trustee, factor or agent entrusted with goods for safe keep-

ing, or sale, and entitled to compensation therefor, may insure them in his own name, and in case of loss recover the full amount of the policy, applying so much to his own use as measures the value of his own interest, and holding the residue for his principal. *Ætna Ins. Co.* v. *Jackson*, B. Mon., (Ky.) 242 ; *Williams* v. *Ins. Co.*, 15 La., (Ann.) 651.

Thus a commission merchant in custody of goods consigned for sale ; a carrier in possession for the purpose of transportation ; a vendee with a right of possession under a contract on payment of the purchase money, have been held to have an insurable interest to the full value of what is insured. *De Forest* v. *Fulton Ins. Co.*, 1 Hall, (N. Y.) 84 ; *Savage* y. *Corn Exc. Co* , 36 N. Y., 655 ; *Shotwell* v. *Ins. Co* , 5 Bosw., (N. Y.) 247 ; 1 Phill. Ins., § 172, and succeeding sections ; 2 Greenf. Evi., § 379. .

We concur in the ruling that the facts constitute a transfer of title and an accompanying legal possession of the tobacco to the plaintiff; and, though left .in the warehouse, it was thereafter under his control and at his risk, the insur able interest before vested in the defendants having ceased to exist.

Numerous cases were cited in the argument to show that the goods were still " *held in trust* " for the vendee; and if not, that they were embraced in the descriptive words, " *sold and not delivered.*" Upon an examination they will be found not to support the proposition contended for.

In *Haugh* v. *Fire Ins. Co.*, 36 Mary., 398, the law is declared to be well settled that a person having goods in his possession, as consignee or on commission, may insure in his own name, and recover the full insurance and after satisfying his own claim he will hold the balance as trustee for the owner.

In *Siter* v. *Morris*, 13 Penn. St., 218, the defendants were commission merchants and forwarding agents who kept a warehouse for receiving goods to be forwarded as directed,

for which they received a compensation, and the policy covered goods " their own, or held in trust or on consignment."

In *Stillwell* v. *Staples*, 19 N. Y., 401, the plaintiffs held in their possession cloths sent to them by the defendant to be made into clothing, and which when burned had been manufactured, and it was decided that in the absence of any ratification of the contract of insurance, and the defendants made no claim on the company for the loss of the cloths and applied the insurance money to compensation for their own losses which were in excess, the defendants had elected to cancel so much of the policy as purported to insure goods held by them in trust, and the plaintiff could not recover. Without assenting to the correctness of this exposition of the law, and of the relations created between the agents in the manufacture and their principal in respect to the insurance, the case furnishes no assistance to the claim of the plaintiff in the case before us.

In *Ætna Ins. Co.* v. *Jackson*, 16 B. Mon., (Ky.) 242, the pork had been bought but not delivered, and was to be paid for on delivery. It was held that the property therein had not passed to the vendees, but remained in the plaintiffs who had not only possession and right of possession, but ownership itself in substantially the same plight as before sale, except that their obligation to deliver on payment of the price restricted them from selling the pork to others, and this was still under cover of the insurance policy.

In *Phœnix Ins. Co.* v. *Favorite*, 49 Ill., 259, it was decided that goods on storage were within the terms of the policy, which extended its protection to such as were held " in trust or on commission."

In *Waters* v. *Ins. Co.*, 85 E. C. L. Rep., 868, the goods insured were in the custody of the plaintiff a wharfinger and warehouse-man, deposited with him in that capacity, and he had a lien for charges of cartage and warehouse rent; and in *London and N. W. Railway Co.* v. *Glyn*, 102 E. C. L.

Rep., 651, the goods were in the hands of the plaintiff as a common carrier and were declared to be held in trust within the meaning of the policy, when destroyed, and the plaintiff could recover full insurance, but would hold the fund after reimbursing their own loss, for the owner, their principal.

These and the other authorities relied on by the appellant recognize an insurable interest in the depositary who has a charge upon the goods committed to his custody, with a correspondent responsibility for their safe keeping and forwarding, but none reach a case in which there has been an absolute sale and delivery, transferring both title and possession to the vendee, and the goods are temporarily left (without an actual removal) in the place of deposit.

But we have been referred in both arguments to a case decided in 1871, in the court of Appeals of New York, ( *Waring* v. *Fire Ins. Co.*, 45 N. Y., 606,) in which the subject and the legal effect of such clauses contained in a fire policy are discussed by FOLGER, J., which seem to furnish a satisfactory solution of the present controversy. The words in the policy were these: " Do insure Waring, King & Co., against loss or damage by fire to the amount of $3,000 on refined carbon oil and packages containing the same, their own, or *held in trust, on commission, or sold but not removed,* contained in bonded warehouse." Other policies were obtained at the same time in different companies amounting in all to $30,000. Subsequently part of the property was sold, but remained in possession of the insured (they informing the purchasers that it was covered by insurance until removed) until consumed by fire, which occurred in less than a month after the insurance was effected. " We have but little difficulty," say the court, " in holding, from the peculiar phraseology of the policy, that something other was meant than property of which a contract of sale had been made, but of which no delivery had yet taken place. 'Sold but not delivered ' is a phrase common with insurance men and

has an ascertained and definite meaning. It applies to property of which a *contract of sale has been made, but of which the ownership has not been changed* by a delivery in pursuance of the contract. ' Sold but not removed ' is another, and we deem a newer form, to express something else. We judge that it was meant to cover that which had been sold and of which a legal binding delivery had been made, the ownership and right of control of which had passed, but which had not been in fact, removed, of which no change of place indicated a change of ownership and possession."

In our opinion this is a fair and reasonable interpretation of the clause of the policy, and the distinction properly drawn between the expressions "sold but not delivered" and "sold but not removed." The first contemplates goods sold, but in a legal sense not delivered, so as to vest the title and possession in the vendee ; the latter refers to what is in law a sale and delivery, but where the goods remain where they were. The *delivery* may be without the *removal*, and the latter word is substituted to give a wider scope to the contract and to extend its protection to cases not embraced before.

We therefore concur in the ruling of the court and declare there is no error.

No error.                                   Affirmed.