STUYVESANT INSURANCE COMPANY v. J. P. REID ET AL.

(Filed 10 May, 1916.)

**1. Insurance, Fire—Policy Contract—Intent—Chattel Mortgages.**

Where a dealer in pianos insures all the pianos in his building not to exceed a stated amount, "whether rented, leased, loaned, or on installment," with provision that "in case a purchaser does not carry insurance the policy is extended to cover such piano," and one of

33—171

these pianos is destroyed while in the possession of a purchaser under a contract reserving title in the vendor, amounting, in effect, to a mortgage or conditional sale, the relationship between the vendor and purchaser will be regarded as that of mortgagee and mortgagor; and the law, looking to the intent of the parties and not to the form of the policy contract, will construe it to cover the interest of the mortgagee in the piano thus destroyed.

### 2. Same—Mortgagor and Mortgagee—Insurable Interest—Subrogation.

Either the mortgagee or the mortgagor may insure his separate interest in the mortgaged property for his own sole benefit; and where the former has done so at his own expense, without imposing any obligation on the mortgagor in that respect, and without reference to the latter's interest, he may collect the insurance to the extent it impairs the value of the mortgage security; and where the mortgagor has assumed the risk of loss or damage, under his contract of purchase, the insurer, having paid the loss, is subrogated to the rights of the mortgagee; and a writing obtained by the insurer from the mortgagee to that effect, and assigning his interest to the insurer, is valid and enforcible.

CIVIL ACTION tried on appeal from a justice's court and upon case agreed, before *Justice, J.,* at Spring Term, 1916, of GASTON.

The relevant facts, as shown in the case, are as follows:

1. On or about 23 September, 1913, upon authority duly given him by the defendants, Joseph S. Wray executed a contract for the purchase of a Stieff piano, a copy of which contract is hereto attached, marked "Exhibit A."

2. That thereupon Charles M. Stieff delivered to the defendants the piano described in said contract.

3. That the defendants paid the installments called for by said contract except the last three of $50 each.

4. That on or about 22 May, 1914, the said piano was destroyed by fire while in the possession of the defendants.

5. That on or about 1 April, 1914, Frederick P. Stieff, trading as Charles M. Stieff, successor to Charles Stieff and Frederick P. Stieff, trading as Charles M. Stieff, entered into an insurance contract with the plaintiff, a copy of which is hereto attached, marked "Exhibit B." This insurance policy was taken out by the firm of Charles M. Stieff, at its own expense, and without any agreement with the defendants, and the defendants paid no part of the premiums therefor.

6. That after the said piano was destroyed by fire the plaintiff paid to Frederick P. Stieff, trading as Charles M. Stieff, the sum of $150, due by reason of said insurance contract, and in consideration therefor the said Stieff duly executed the subrogation receipt and the assignment, copies of which are hereto attached, marked respectively "Exhibit C" and "Exhibit D." That the contract referred to as "Ex-

hibit A" was in form of a conditional sale, retaining title in Charles M. Stieff till payment of the purchase price and closing with the following stipulations on the part of the purchaser: "And I further agree to bear all loss in case of fire."

The insurance policy referred to (Exhibit B) was a contract insuring Frederick P. Stieff, trading as Charles M. Stieff, against all direct loss or damage by fire to an amount not exceeding $25,000, etc., on pianos and organs, etc., rented, leased, loaned, etc., or on installment, or which they have for sale, while contained in any building, sheds, piers, wharves, etc., or in transportation, etc., and containing further provision: "It is understood that in case a purchaser does not carry insurance the policy is extended to cover such piano."

The Exhibits C and D referred to are as follows:

### EXHIBIT C.  SUBROGATION RECEIPT.

Received of the Stuyvesant Insurance Company, by the hand of J. S. Frelinghuysen, general agent, the sum of $150, being in full of all claims and demands for loss and damage by fire on 22 May, 1914, to the property insured by Policy No. 55384, issued at the J. S. Frelinghuysen agency of said company, and in consideration of such payment the undersigned hereby assigns and transfers to the said company each and all claims and demands against any person, persons, or property arising from or connected with such loss or damage (and the said company is subrogated in the place of and to the claims and demands of the undersigned against said person, persons, or property in the premises) to the extent of the amount above named.

FREDERICK P. STIEFF,
*Trading as Charles M. Stieff.*

### EXHIBIT D.

In consideration of $150 paid to him by the Stuyvesant Insurance Company, Frederick P. Stieff, successor to Charles Stieff and Frederick Stieff, trading as Charles M. Stieff, sells, assigns, and transfers to the Stuyvesant Insurance Company and its assigns, without recourse on him, the contract of which the annexed is a copy, together with all claims for the balance due on the indebtedness represented by it.

FREDERICK P. STIEFF,  [SEAL]
*Trading as Charles M. Stieff.*

Upon the facts as stated there was judgment for defendant, and plaintiff excepted and appealed.

*Charles W. Tillett, Jr., for plaintiff.*
*Mangum & Woltz for defendant.*

HOKE, J., after stating the case: It is well recognized that a mortgagee and mortgagor may each insure the mortgaged property for his own benefit, and where a mortgagee has taken out such insurance at his own expense, without stipulations in favor of the mortgagor or conditions of any kind imposing an obligation or duty on the mortgagee to protect the property for the mortgagor's benefit, such mortgagee, in case of loss of the property by fire or damage thereto, is not accountable to the mortgagor for the amount collected from the insurance company, either on the debt or otherwise. *Leyden v. Lawrence,* 79 N. J. L., 113; *Ins. Co. v. Woodbury,* 45 Me., 447; *Fire Ins. Co. v. Bond,* 48 Neb., 743; *Gillespie v. Ins. Co.,* 61 W. Va., 169; *Ins. Co. v. Ins. Co.,* 55 N. Y., 343; 1 Jones on Mortgages (4 Ed.), sec. 420. In *Ins. Co. v. Woodbury* the principles referred to are stated as follows:

*a.* If a mortgagee insures his own interest without any agreement between him and the mortgagor, and a loss accrues, the mortgagor is not entitled to any part of the sum paid on such a loss to be applied to the discharge or reduction of his mortgage debt.

*b.* When the mortgagee effects insurance at the request and cost and for the benefit of the mortgagor as well as his own, the mortgagor has the right in case of loss to have the money applied in discharge of his indebtedness.

And it is further held by the great weight of authority that where the mortgagee has taken out insurance on the mortgaged property for his own benefit, paying the premiums therefor himself, and without agreement with mortgagor or stipulations or conditions, as stated, imposing a duty to protect in that way the mortgagor's interest, the insurance company, in case of loss, on payment of the policy and satisfaction of the debt, is entitled to be subrogated to the rights of the mortgagee, and it would seem that, on payment of the policy, satisfying the debt in part, the right would arise *pro·tanto,* subordinate, however, to the claim of the mortgagee for any unpaid balance. *Carpenter v. Providence, etc., Ins. Co.,* 41 U. S., 495; *Baker v. Monumental Assn.,* 58 W. Va., 408; *Leyden v. Lawrence,* 79 N. J. L., 113; *Ins. Co. v. Woodruff,* 26 N. J. L., 541; *Honore v. Lamar Fire Ins. Co.,* 51 Ill., 409; *Phœnix Ins. Co. v. Bank,* 85 Va., 765; *Forest Oil Co. Appeal,* 118 Pa. St., 138; 4 Cooley Ins. Benefits, p. 3915; May on Insurance, sec. 449; 1 Jones on Mortgages, sec. 420.

In Cooley's Insurance Briefs it is said: "It is the general rule that where the interest of a mortgagee is separately insured for his own benefit, and a loss occurs before payment of the mortgage, the underwriters are bound to pay the amount of such debt to the mortgagee, provided it does not exceed the insurance, and are thereupon entitled

to an assignment of the debt from the mortgagee, and may recover the same from the mortgagor. The payment of insurance by the underwriter does not, in such case, discharge the mortgagor from the debt, but only changes the creditor. In Jones on Mortgages the same position is thus stated: "In the first place, it is the undisputed doctrine of all the cases that the mortgagor himself can claim no benefit from such insurance. The question in dispute is whether, upon payment of the loss under such a policy, the insurer shall be subrogated to the security held by the mortgagee, or whether he may, after having collected the insurance money, proceed to collect the mortgage debt from the mortgagor, and the property mortgaged.

The general rule and the weight of authority is that the insurer is thereupon subrogated to the rights of the mortgagee under the mortgage. This is put upon the analogy of the situation of the insurer to that of a surety. The mortgagor and mortgagee have each an insurable interest. If the mortgagee obtains insurance on his own account, and the premium is not paid by or charged to the mortgagor, the latter cannot claim the benefit of a payment of the policy; but the insurer is entitled to be subrogated to the claim of the mortgagee and may recover upon the note." And in *Leyden v. Lawrence, supra,* it is held: "That a mortgagee of real estate has an insurable interest therein, and when he insures the property at his own expense and solely for his own benefit, the insurer, if obliged to pay a loss occasioned by injury to the property, may be subrogated *pro tanto* to the rights of the mortgagee under the mortgage. (2) When the insurance has been taken by the mortgagee of real estate at the expense and for the benefit of the mortgagor as well as for his own protection, the mortgagor, in case of loss, is entitled to have the avails of the policy applied for his benefit towards the discharge of the indebtedness."

Under our decisions the claim of the insured in this case was, in effect, and for most purposes, a chattel mortgage, *Lancaster v. Ins. Co.,* 153 N. C., 285, and a proper application of the foregoing principles is, in our opinion, against the conclusions and judgment of his Honor below.

While the insurance policy carried by the Stieff Company for $25,000, covering all pianos, etc., situate in this company's buildings, etc., "whether rented, leased, loaned, or on installment, and when kept for sale," might have justified a recovery for the full value of an instrument so situate, the right in some of the instances mentioned growing out of the relationship of bailee on the part of the Stieffs and imposing on the company the obligation to take reasonable care of the property committed to their keeping, when an instrument was sold and taken by the purchaser into his own possession and control

under a contract of this character, the relationship, by the terms of the policy, became, in effect, that of mortgagor and mortgagee, and the rights and liabilities of the parties in reference to the insurance money must be determined by the principles applicable to that relationship. True, the language of the policy is that "the same is extended to cover the piano," but the question does not depend so much on the form in which the stipulation is expressed, but rather on the intent of the parties and the nature of the obligations assumed. Angell on Fire Ins., sec. 59, p. 108, and note 2.

As to the piano sold and delivered to the purchaser, the Stieff Company, in the absence of some arrangement with the mortgagor or some obligation growing out of the relationship between them, could only insure the property in reference to their interest in it, that is, against loss or damage by fire to the extent that the same diminished the value of their security. And on the facts in evidence showing that the mortgagee insured on his own account, paying the premiums himself, and without reference to the rights and interests of the mortgagor in the property or any agreement with him concerning it, it must be held that the mortgagor has no claim to the insurance money and no protection from plaintiff's right of subrogation arising by reason of its payment, a position that derives force, we think, from the stipulation also appearing in the contract of sale: "That the purchaser is to bear all loss in case of fire."

We do not understand that the cases to which we were more especially cited by counsel, of *Home Ins. Co. v. Baltimore Warehouse Co.,* 93 U. S., 527; *Lucas v. Ins. Co.,* 23 W. Va., 258; *Lockhart v. Cooper,* 87 N. C., 149, are in conflict with these principles. They were cases upholding the right of a warehouseman or merchant, acting in part as such, to recover the entire value of the property destroyed by fire, not exceeding the sum insured, where the policy insured goods or merchandise in their keeping and control, either their own or "held by them in trust" or "on commission," the recovery to be held by the warehouseman to the extent of his interest and the remainder in trust for the owner. The claimant, as bailee, in control and care of the property destroyed, had a right to insure the property to the extent of its insurable value, and was allowed to recover because it contemplated and was taken out for the purpose of protecting the owners as well as himself. But the position does not apply to our case where, as stated, the mortgagee, without any agreement with the mortgagor and having no care or further control of the property, insures the same at his own expense and for his own benefit.

The case of *King v. State Mutual Fire Ins. Co.,* 7 Cushing, 1, to which we were also cited, may not be allowed to affect the result.

That was an action at law in which a mortgagee, holding a debt thus secured for $400, sued on an insurance policy of $300, and payment was resisted because of a demand by the company that plaintiff assign them his security. The right of subrogation, or the extent of it, was not presented in that action, nor could it be finally determined therein, and the Court very properly held that the plea of the company was no valid defense. To the extent, however, that the opinion gives countenance to the position that the right of subrogation could in no event arise, even on payment of the mortgagee's debt, it is, as stated, contrary to the great weight of authority, and may not be considered authoritative on the facts presented in the record.

There is error in the judgment, and, on the facts as agreed upon, there must be a judgment for plaintiff.

Reversed.