INDUSTRIAL REALTY COMPANY *v.* INTERNATIONAL REINSURANCE CORPORATION *et al.*

606

*Park & Strozier, O. A. Park Jr., and D. F. McClatchey Jr.,* for plaintiff in error.

*Alston, Alston, Foster & Moise, Walter DeFore; James C. Estes, Henry J. Miller, and Gilbert C. Robinson,* contra.

Atkinson, Justice. The question in this case is whether the judge abused his discretion in refusing to allow the intervention of a creditor for the purpose of claiming an interest in a fund in the hands of a receiver, where the court had issued an order requiring all creditors to file their claims within four months, and notice of such order was published once a month for three months in chosen newspapers of general circulation, and the one seeking to intervene knew of the pendency of the litigation, and did not seek to intervene for over a year after the date specified in the order for interventions of creditors. Moore filed in Bibb superior court an equitable petition against Independence Indemnity Company and International Reinsurance Corporation, in which receivers were appointed to take charge of and administer certain bonds which those companies had deposited with the Treasurer of the State of Georgia. Later the Public Indemnity Company, the Georgia Casualty Company, and the Georgia Bond Mortgage Company were made parties, and the receivership was extended to include their deposits with the State Treasurer, and all of the assets of all the defendants within the State of Georgia. The Lone Star Cement Company filed in Fulton superior court an equitable petition against the Independence Indemnity Company, in which also a receiver was appointed, who obtained that company's bonds on deposit with the State Treasurer, which were converted into cash and held subject to the order of court. A controversy between the receivers of the respective courts was compromised by the payment

by the Fulton receiver to the Bibb receivers of $1000, against which it was agreed that intervening creditors in the Fulton case would make no claim. The Lone Star Cement Company had a judgment against the Independence Indemnity Company for more than $35,000. The Industrial Realty Company had a prior judgment against the Independence Company for $18,000, on which it intervened in the Fulton case. These two claims were adjudged to have priority over other creditors, and under a judgment of Fulton superior court, dated May 16, 1934, the claim of the Industrial Realty Company was paid in full, and the Lone Star Cement Company's claim was paid in part out of the funds in the hands of that court's receiver. This judgment was reversed by this court, which held that certain claims under the longshoremen's and harbor workers compensation act of Congress were superior to the judgments of the Lone Star Cement Company and plaintiff in error. *Ford* v. *Lone Star Cement Co.,* 181 *Ga.* 212 (181 S. E. 773). The judgment of this court was rendered on April 10, 1935, and on motion for rehearing the judgment was adhered to on October 2, 1935. The Lone Star Cement Company under this judgment had to pay back all it had received on this judgment, and Industrial Realty Company had to pay back $5821.70 of what it had received, leaving its judgment against the Independence Indemnity Company unsatisfied in that amount.

In the meantime, in Bibb superior court on June 28, 1934, was entered an order that all claims against all defendants in the case there pending be filed on or before October 1, 1934, and that claims not filed by that time should not share in the distribution of funds held by its receivers. On July 10, 1935, the Bibb receivers filed a report showing receipts and disbursements and all claims filed, classified according to priorities, in which were included two claims filed in 1935 after the expiration of the time limited in the order. On August 17, 1935, the court assigned a final hearing for October 21, 1935, on which date the hearing was had, and the receivers' recommendations were orally approved. It was also orally stated by the court that the contracts between the International Reinsurance Corporation on the one hand, and the Public Indemnity Company and the Independence Indemnity Company on the other, by which the International acquired the assets and assumed the liabilities of those companies, were valid; that

under those contracts, after the liabilities of Public Indemnity Company were paid, its assets became the property of the International and would be distributed to its creditors, and that creditors of the Independence would be entitled to share in the assets of the International, including those thus acquired from the Public. Until this pronouncement by the court on October 21, 1935, it was not known that there would be in the Bibb court any assets that would be available to pay the judgment held by the Industrial against the Independence. No decree was entered on October 21, 1935, but the judge directed the receivers' attorneys to prepare a decree in accordance with his oral statements. On November 8, 1935, before the final decree was prepared or signed, and before any distribution was made, the Industrial Realty Company filed in Bibb superior court an intervention based on its judgment against the Independence. After a hearing on November 29, 1935, at which the foregoing facts appeared, it was admitted that the Industrial on January 21, 1932, had secured a valid judgment against the Independence, and that the balance due thereon was the amount stated in the intervention. The court, on December 11, 1935, disallowed and denied the intervention, on the sole ground that it had not been filed within the time limited by the court's order of June 28, 1934, requiring the filing of all interventions by October 1, 1934.

The case here is on exception to the order of December 11, 1935, disallowing the intervention. Did the judge abuse his discretion in refusing to allow the intervention under the circumstances stated? At the outset it may be said that had the judge allowed the intervention in the circumstances set forth, it would not have been an abuse of his discretion. The plaintiff in error had obtained a judgment in 1932, and in 1934 had obtained payment thereof, and not until 1935 was it deprived of the payment of $5821.70, by a decision of this court, at which time the "bar" order had become effective. The intervention in Bibb superior court was for the purpose of obtaining payment of the $5821.70. The contention of the plaintiff in error is, that, until the judge of Bibb superior court made his announcement as to priorities, it was not anticipated that there would be any fund out of which the judgment could have been made. This, however, was a matter of legal determination. The purpose of allowing interventions was

to have decided such questions; and the plaintiff in error, not denying its knowledge of the pendency of the litigation in Bibb superior court, did not file its intervention; and in its brief it is not denied that it knew of the "bar" order, requiring interventions to be filed by October 1, 1934. It is strongly urged, in an able brief, that the allowance of this intervention could have injured no one excepting those who might be deprived because of the legal priority of plaintiff in error,—no creditor had acquired any right by the delay in filing, and there had been no final decree, and the funds remained in the hands of the receivers undistributed; and that the fund in the receivers' hands was subject to the payment of the claim of plaintiff in error.

The Code, § 37-1006, provides: "While the funds raised under a proceeding in the nature of a creditors' bill shall remain in the custody of the court, creditors having claims thereon may be made parties and assert their right thereto." This section is a codification of two decisions, *Gray* v. *Perry,* 51 *Ga.* 180, 185, and *Minnehan* v. *Brunswick & Albany Railroad Co.,* 52 *Ga.* 248, 249. Neither of them dealt with the power of a court to issue an order requiring interventions and claims to a fund to be filed within a limited time. If the Code section be given the construction claimed by the plaintiff in error, no court would ever have the power to issue a "bar" order. In the absence of such order, the court would be authorized and possibly required to allow an intervention for the purpose of claiming funds in the custody of the court, even after a decree, in the absence of some controlling legal or equitable reason. The plaintiff in error refers to *Columbus Iron Works* v. *Sibley,* 164 *Ga.* 121 (137 S. E. 757). In that case the judge made an order fixing a time limit of less than two months within which creditors might intervene, and the order provided that the receiver should publish a notice once a week for two weeks, between the date of his order and the time within which creditors must intervene, in a newspaper of general circulation, published in the county where the suit was pending. It was held such order was unreasonable and void, as to intervenors, most of whom were non-residents of the State, and without actual notice of the order or time limit; and consequently this court held that the trial court erred in declining to allow certain creditors to intervene. It appeared in that case that plaintiffs in error had no actual notice of

the order. In *Columbus Iron Works* v. *Sibley,* supra, this court referred to the Code of 1910,. § 5556, providing that service on parties residing out of the State should be made by publication twice a month for two months, and the provision of that section was analogized to the situation in which the judge granted the order of publication for only two weeks. This court said: "If a reasonable excuse for delay to make an earlier claim is shown, the court may, in its discretion, permit a creditor to come in and prove his claim at any time before actual distribution, or even after partial payments, if there is a surplus in the hands of the receiver, so as not to interfere with payments already made." In that decision an opinion of the Supreme Court of North Carolina was quoted, as follows: "In Bank of Washington *v.* Creditors, 80 N. C. 9, it was held that 'A creditor, bona fide ignorant of the proceedings had for the distribution of a fund, will be allowed to come in and prove his claim against the estate, after the time fixed for presentation and proof of claims.' "

In the instant case it does not appear, nor is it claimed, that the plaintiff in error did not know of the pendency of the suit in Bibb superior court, or of the "bar" order. The plaintiff in error had been paid in full its judgment in Fulton superior court; and if subsequently, while a writ of error was pending in this court, the "bar" order was effective, and this court, after the time limit of October 1, 1934, reversed the judgment of Fulton superior court, and the plaintiff in error had *immediately asked to partici-pate,* there would have been a stronger equity in its favor. However, the plaintiff in error lacked $5821.70 of having received payment of its judgment for $18,000 from Fulton superior court, and it asked Bibb superior court, over a year after the "bar" order, *and several months after this court had reversed the judgment of Fulton superior court,* for permission to intervene for the $5821.70 in Bibb superior court, although a rehearing had been granted. These "bar" orders are·generally recognized in State and Federal courts, and their purpose generally is to permit distribution without embarrassment to the distributing officer. Such orders are further granted in order to make an end of litigation, and to more speedily pay to creditors that which is due them, and to shorten the length of litigation which oftentimes is protracted through the years to the damage of all persons interested. The law aids the

vigilant, and the allowance of interventions just before the signing of a decree might open up and protract the litigation. A strong decision from the Second Circuit Court of Appeals, Employers' Liability Assurance Corporation *v.* Astoria Mahogany Co., 6 Fed. (2d) 945, 946, is as follows: "Orders of foreclosure are primarily intended for no more than safety in distribution. In this regard they are like the early orders of the same kind of the English Court of Chancery in the administration of a decedent's estate. Gillespi *v.* Alexander, 3 Russell, 130, 136. They enable the receivers to dispose of the property, but not to forfeit the rights even of dilatory creditors. That delay may be enough we do not deny, but certainly not unless the result of allowing the claim is to destroy intermediate interests, arising on the faith of creditors' inaction." The plaintiff in error cites First National Bank of Vincennes *v.* Gregg, 91 Ind. App. 405 (169 N. E. 691): "We are of the opinion that the courts of equity have the right to control the administration of a receivership, and the orders of the court will not be disturbed unless abuse of discretion is clearly shown. In the case at bar, the claim of the appellant seems to show it to be the largest creditor of the Elliston Gravel Company; that no distribution had been made of any of the assets at the time application to file its claim was made. The appellees charge that the delay was occasioned by the appellant trying to collect the debt upon collateral security that it held. If this is true and the appellant had been successful in collecting its debt in this manner, it might have been to the advantage of the other creditors. We are of the opinion that it was an abuse of discretion on the part of the trial court to deny the right of the appellant to file its claim."

In 53 C. J. 237, § 394, it is said: "In general, where an order is given for the publication of notice of a limitation of the time to file claims, and such notice is duly published, claims not filed within the time specified in the notice are precluded in the proceeding from sharing in the assets." And the further statement is made: "Knowledge of the exclusive possession and control of property by a court through its receiver places a claimant of ordinary prudence upon inquiry as to all measures requisite for him to pursue in order to share in the distribution, including the order limiting the time for filing the claim." See also 15 C. J. 1437,

§ 173. The defendant in error presents decisions sustaining the action of the court below, not all of which need be mentioned. Among them are North American Co. v. St. Louis &c. Ry. Co., 288 Fed. 612; Pennsylvania Steel Co. v. New York City Ry. Co., 187 Fed. 287; s. c. 229 Fed. 120; 16 Fletcher on Corporations, 549. See also Foster v. Mansfield &c. Railroad Co., 146 U. S. 88, 100 (13 Sup. Ct. 28, 36 L. ed. 899). In North America Co. v. St. Louis &c. Ry. Co., supra, it was said: "The counsel for interveners knew soon after May, 1913, that all the property of the railroad company had been delivered to the possession and control of this court for administration and distribution, and that the railroad company had none of it. They knew that in cases of this character the common, lawful, and effective practice of courts of equity was to make and publish by advertisement in the newspapers decrees or orders limiting the times to present claims to such courts to participate in the benefits of the administration and distribution of the property, and by such orders or decrees to bar from participation therein the claims of all those who failed to file statements of them within the time fixed. By an examination of the record of this court at any time between May 29, 1914, and February 1, 1916, the interveners or their counsel could have learned of the interlocutory decree and its effect. Notice of facts and circumstances which would put a man of ordinary prudence and intelligence on inquiry is, in law and in equity, notice of all the facts a reasonably intelligent inquiry would disclose. Wood v. Carpenter, 101 U. S. 135, 137, 141, 25 L. ed. 807. The interveners' notice of the exclusive possession and control by this court, by its receivers, of all the property of their debtor for the purpose of administration and distribution, was sufficient to put a claimant of ordinary prudence on inquiry as to the course requisite for him to pursue to share therein, and such an inquiry would have disclosed, as it did disclose to hundreds of other claimants, the limitation and bar of the interlocutory decree. If the interveners failed to exercise like prudence and diligence, that fact does not appeal with sufficient force to induce a court of equity to relieve them of the injurious effect of that neglect, by imposing it upon the diligent claimants who complied with the decree of the court and their successors in interest."

In the instant case the trial court might have allowed the inter-

vention. The intervenor knew the condition of the litigation and how long it had continued, knew the desirability of its conclusion, and the result upon the entire litigation for these interventions to be allowed, and the relief prayed with the possible reopening of issues that had been concluded, and distributions that had been determined. It knew the dates of the decision of the Supreme Court, and its adherence to the opinion, and was in a position to judge of the force and weight to be given to the excuse offered for failure to intervene. But the court here exercised its discretion against the intervenor. A liberal rule should be observed for permitting creditors to intervene and assert their rights, even though the time provided in "bar" orders may have expired, provided a reasonable excuse is given for failure to have observed it. However, in the circumstances of the case it can not be said the court abused its discretion.

*Judgment affirmed. All the Justices concur, except Russell, C. J., and Hutcheson, J., who dissent.*