WITHERS, commissioner, *v.* HATCHER, receiver, *et al.*

No. 11985. JANUARY 15, 1938.

*H. Collin Minton Jr., J. C. Savage,* and *Bond Almand,* for plaintiff in error.

*Harris, Harris, Russell & Weaver, Little, Powell, Reid & Goldstein, DeFore & Estes, Jones, Russell & Sparks, Alston, Alston, Foster & Moise,* and *Gilbert C. Robinson,* contra.

JENKINS, Justice. On April 10, 1933, upon the petition of creditors, the superior court of Bibb County appointed receivers who took charge of certain assets in Georgia, of Public Indemnity Company, a New Jersey corporation, International Reinsurance Corporation, a Delaware corporation, and other related corporations. On or before that date, service of the petitions, proceedings, order of appointment, and rule nisi was made on the companies by serving their agents in this State. No contest was made by the defendants, and the only questions raised in the progress of the case involved the validity and priority of interventions and claims of creditors, and the administration of the assets. On April 19, 1933, a Delaware court appointed receivers in that State for International Reinsurance Corporation. On April 21, 1933, the Com-

missioner of banking and insurance of New Jersey took over the affairs in that State of Public Indemnity Company. On June 28, 1934, Bibb superior court entered an order that creditors of the corporations prove their claims with the receivers by October 1, 1934, and upon "failing to do so within the time limit . . be forever barred from participation in the distribution of the assets." After due written notice to previous intervenors, claimants, and parties at interest, and a preliminary hearing as to the distribution of funds, the court, on December 11, 1935, entered a decree sustaining the validity of a contract of purchase and sale, by which all of the assets of Public Indemnity Company were transferred to International Reinsurance Corporation, except $60,000 of first mortgages not in default and claims against "the M. & S. Agency," upon the undertaking of the International to assume and discharge all liabilities of Public Indemnity Company except its liability on bail-bonds, and to return to the Public Company "the sum, if any, by which the proceeds of the property of the Public . . shall exceed [its] liabilities agreed to be paid hereunder." The court disallowed a $25,270 claim of the United States, based upon a bail-bond forfeiture, on the ground that it was specifically excepted from the liabilities assumed in the assignment contract. The decree provided that claims against Public Indemnity Company be paid as recommended by the receivers; that the remainder of funds from its assets in the hands of the receivers vest in International Reinsurance Corporation; that such funds be disbursed in payment of claims against the International and a related corporation, as recommended by the receivers and approved by the court; that the application of the Delaware receivers for a removal of the funds to that State be denied; and that "jurisdiction is retained . . for the purpose of determining any conflict or uncertainty in carrying out the terms of this decree not inconsistent with the findings and conclusions heretofore made and established as the judgment of this court." A further history of the proceedings appears in *Industrial Realty Co.* v. *International Reinsurance Cor.*, and *U. S.* v. *International Reinsurance Cor.*, 183 *Ga.* 605, 614 (189 S. E. 49, 237).

On March 4, 1937, "the Public Indemnity Company by Honorable Carl K. Withers, commissioner of banking and insurance of New Jersey, and, as such, liquidator" of that company,

the New Jersey corporation in liquidation, "moved the court to allow what was designated as an ' extraordinary motion and . . intervention.'" The New Jersey commissioner alleged that he was not advised of the proceedings in the case and of the decree until about February 24, 1937; that he took over the affairs of said corporation on April 21, 1933, under a New Jersey statute empowering him to sue for, recover, and distribute all of the corporate assets wherever the same may be situate; and that he was authorized to intervene in this case also by an order of the court of chancery of New Jersey; that equity receivers for International Reinsurance Corporation had been appointed, on April 18, 1933, by the court of chancery of Delaware; that the New Jersey commissioner had instituted suit in the Delaware court to set aside the contract for reinsurance and assignment of assets between the Delaware and New Jersey corporations, as above described, on the ground of fraud; that no decision had been made in that suit; and that after payment of the Georgia creditors of the Public Indemnity Company, the remaining assets rightfully belonged and should go to the New Jersey commissioner. He prayed for an order allowing the intervention and directing the receivers to withhold distribution until a decision by the chancery court of Delaware as to the validity of the contract; and prayed alternatively for a modification of the decree, so as to include his claim as a creditor of Public Indemnity Company, under the New Jersey statute, in the amount of $3,500,000 of claims filed with him, and so as to direct the receivers to turn over to him any equity or surplus in the assets of that company, after paying its Georgia creditors and costs and expenses. On April 3, 1937, the commissioner filed a supplemental motion in his official capacity as "liquidator of the Public Indemnity Company," designating this pleading as an "extraordinary motion," stating averments and prayers similar to those in his first pleading, and attaching affidavits and correspondence for the purpose of showing absence of laches and lack of knowledge of the final decree until February 24, 1937. The receivers and certain intervenors filed objections to allowance of the interventions and grant of the relief prayed.

The commissioner excepts to orders refusing the allowance and relief, after the hearing of testimony. The assignments of error are: (1) that as statutory receiver of Public Indemnity Company

in its domiciliary jurisdiction, the commissioner was entitled to intervene for the purpose of representing the rights and claims of its creditors; (2) that as liquidator and as primary receiver, he was not a party to the case at the time of the decree on December 11, 1935, had no notice of the decree, and had a right to intervene before final distribution, in order to have the decree so modified as to protect creditors, and to assert his rights as liquidator and as primary receiver to the surplus in the hands of the Georgia receivers. While there was testimony tending to support the commissioner's allegations that as liquidator of Public Indemnity Company neither he nor his department had knowledge of the order limiting the time for filing claims, or of the proposed terms of the final decree, or of its entry, until February, 1937, and evidence disputing testimony of one of the receivers, this receiver testified that on a trip to New Jersey, about May, 1934, he called on the deputy commissioner of insurance of New Jersey, as the official whose name appeared on another claim in the record as the officer handling the affairs of Public Indemnity Company, and discussed with him the pendency of the Georgia receivership of that company, and what should be done with certain of its assets, and was in effect told that "we could run our affairs in Georgia, and he would run them up there," and "You keep what you have got, and we will keep what we have." In the documents attached to the interventions offered by the commissioner appear a notice and copy of the recommendations of the receivers as to priorities and distribution, signed by the receivers and their attorneys, informing as to a hearing in October, 1935, to determine all legal questions connected with the receivership and as to how the funds should be distributed, and attaching a copy of the order of the court. While this notice contains an insert, referring to another intervention previously filed by the deputy commissioner against funds of one of the related corporations the assets and liabilities of which were included in the receivership, it refers particularly to claims against and to the assets and liquidation of Public Indemnity Company, and to the proposed hearing and final decree thereon. It was addressed generally to the deputy commissioner as "a creditor, intervenor, claimant, attorney, or party interested." Also attached to the instant interventions was a letter dated October 22, 1935, addressed to the deputy commissioner, from the

Georgia attorney representing his claim filed in this proceeding against the related corporation, and informing him as to the attorney's attendance at a hearing on "questions involved in the State-court receivership involving Public Indemnity Company and its affiliated companies." The deputy commissioner's reply, dated November 9, 1935, referred to the attorney's letter "regarding the Public Indemnity matter."

1. "While a chancery or statutory receiver can not sue in the courts of a foreign jurisdiction by virtue of his appointment alone, he can do so when he is expressly or by necessary implication vested with title, or when he is made a quasi-assignee or representative of creditors." *Bullock* v. *Oliver,* 155 *Ga.* 151 (116 S. E. 293, 29 A. L. R. 1484) ; *Mell* v. *McNulty,* 185 *Ga.* 343 (195 S. E. 181), and cit. While the instant pleadings of the commissioner of banking and insurance of New Jersey, seeking to intervene in a receivership proceeding in a superior court, claimed this right by virtue of an order of a New Jersey court of chancery, and in that respect were insufficient, they also set up that the New Jersey statute, under which the commissioner took over the affairs of the involved corporation in the State of its domicile, authorized him to sue for, recover, and distribute all corporate assets wherever situated. Under the rule stated, these averments sufficed to authorize an intervention, subject, however, to the same conditions which would control the right of any creditor to intervene, as here sought, after decree and an order barring claims.

2. With reference to interventions by two other alleged creditors in this proceeding, this court has held that where the creditors knew of the pendency of the litigation, and in the exercise of ordinary prudence should have known of the entry of the decree, but failed to file an intervention until after the decree and for more than a year after the order barring all claims not previously filed, the court did not abuse its discretion in disallowing the interventions, even though "a liberal rule should be observed for permitting creditors to intervene and assert their rights, [and] even though the time provided in 'bar' orders may have expired, provided a reasonable excuse is given for failure to have observed it." *Industrial Realty Co.* v. *International Reinsurance Cor., Lone Star Cement Co.* v. *International Reinsurance Cor.,* 183 *Ga.* 605, 613 (189 S. E. 49, 53). This court has also affirmed the

decree, fixing the priorities and manner of distribution, and holding valid a contract between two insurance companies, which was vital in determining the relative priorities and distribution, and which the instant interventions of the New Jersey commissioner sought to attack, and under which it is now sought to delay the distribution provided for by the decree until a decision by the Delaware courts as to the validity of the contract in a direct attack thereon in that court. *U. S.* v. *International Reinsurance Cor.*, 183 *Ga.* 614 (189 S. E. 237). The superior court did not abuse its discretion in disallowing the instant interventions, under the controlling rulings stated, and under the documentary evidence and oral testimony by one of the receivers. Such evidence fully authorized a finding that the commissioner was in laches in not intervening to attack the decree and present the questions now raised, until more than a year after the decree and more than two years after the expiration of the time fixed by the order in bar, and that the commissioner had sufficient prior knowledge, pending the litigation, to have required him, in the exercise of due diligence, to take earlier steps for the protection of his interests, in meeting the terms of the order or excepting to it or to the decree. *Judgment affirmed. All the Justices concur.*