GAINESVILLE NATIONAL BANK *et al. v.* MARTIN, tax-collector, *et al.*

No. 12646. FEBRUARY 16, 1939.

*MacDougald, Troutman & Arkwright* and *T. M. Smith,* for plaintiffs.

*Wheeler & Kenyon, Copeland & Dukes, Wilcox, Connell & Wilcox,* and *Franklin & Eberhardt,* for defendants.

GRICE, Justice. ■ Do the plaintiffs in error have a right of recovery under fire-insurance policies taken out by persons who are mortgagee beneficiaries under a trust deed, for the sole protection of said mortgagee beneficiaries, where a fire loss has occurred thereunder, all the insurance premiums having been paid by said mortgagee beneficiaries, and where a pro-tanto assignment and subrogation agreement is made between said mortgagee beneficiaries and the insurers, upon payment by the insurers to said mortgagee beneficiaries of the fire loss sustained by them and by virtue of said

insurance policies, even though the policies contain no subrogation clause giving the insurers such right of recovery? This question has not heretofore been presented to this court, though issues somewhat similar have been. It was held in *Scottish Union & National Insurance Co.* v. *Colvard,* 135 *Ga.* 188 (68 S. E. 1097), that where a fire policy on property of a mortgagor was made payable to the mortgagee as his interest might appear, and the insurer, by separate agreement with the mortgagee, agreed to pay the mortgagee notwithstanding it might deny liability to the assured, with the right under such agreement to be subrogated to the rights of the mortgagee against the assured, and paid the mortgagee, with a denial of liability to the assured, where it was in fact at the time liable to the insured, the payment to the mortgagee operated, and it was made, to extinguish pro tanto the debt of the assured to the mortgagee, and in an action against the assured on the note, transferred by the mortgagee to the insurance company in consideration of its payment, the assured might plead payment, notwithstanding a failure to furnish proofs of loss, or to commence suit on the policy within the time prescribed therein; the payment to the mortgagee having been made before the expiration of such time. In *Peoples Bank of Mansfield* v. *Insurance Co.,* 146 *Ga.* 514 (91 S. E. 684, L. R. A. 1917D, 868), it was held that if a house on land covered by a security deed was insured, with loss payable to the creditor, under a policy providing for subrogation pro tanto, the insurer, paying the creditor the amount of the debt and taking transfer and security deed, was subrogated to the creditor's rights to the extent of the debt paid. Upon the question as to whether or not, in case of an independent insurance by a mortgagee upon his own account and for his own protection, the insurer, upon payment of the loss, is entitled as a matter of law to be subrogated to the mortgagee's rights, there is a slight conflict of opinion, though by the great weight of authority such right of subrogation exists. The principal case denying the right is King v. State Mutual Fire Insurance Co., 7 Cushing, 1 (54 Am. Dec. 683), decided by the Supreme Judicial Court of Massachusetts in 1851. That decision stands almost or quite alone. No holding to that effect from any other State is cited on the briefs filed by able and industrious counsel for defendants in error, and our own investigation has disclosed none. The rule contrary to that stated by the Massachusetts court is laid

down in 26 C. J. 461; 1 Jones on Mortgages (7th ed.), § 420; and in 7 Cooley's Briefs on Insurance (2d ed.), 6716, where, with the exception of the Massachusetts cases, an unbroken line of cases are cited in support of the statement that "It is a general rule that where the interest of a mortgagee is separately insured for his own benefit, and a loss occurs before payment of the mortgage, the underwriters are bound to pay the amount of such debt to the mortgagee, providing it does not exceed the insurance, and are thereupon entitled to an assignment of the debt from the mortgagee, and may recover the same from the mortgagor. The payment of the insurance by the underwriter does not, in such a case, discharge the mortgagor from the debt, but only changes the creditor." See also the cases collected and cited in a note to Monumental Savings & Loan Asso. *v.* Scottish Union &c. Insurance Co., in 3 L. R. A. (N. S.) 79. For a more recent ruling to the same effect, in which a number of later rulings are cited, see Stuyvesant Insurance Co. *v.* Reid, 171 N. C. 513 (88 S. E. 779). Here the mortgagees gave to the insurance companies written assignments of their claims. The position of the plaintiffs is therefore much stronger than if they merely relied on the law to give them the right of subrogation, in the absence of such assignment. In Honore *v.* Lamar Fire Ins. Co., 51 Ill. 409, 414, it was said: "In Concord A. M. Ins. Co. *v.* Woodbury, 45 Maine, 452, where the assured had voluntarily assigned his claim to the insurance company upon payment by it, as in the present case, the court held the company entitled to recover. The question of the right to subrogation against the will of the mortgagee was not presented in that case, nor is it in this, because the assignment was made by the mortgagee upon payment of the loss. The only question strictly presented here is, whether the mortgagor has been discharged from his debt by the payment of the mortgagee's policy, and on this point there is no disagreement among the authorities. The debt is still in existence, and the strong equity of the insurance company has been united to the legal title." See also Hackett *v.* Cash, 196 Ala. 403 (72 So. 52). We are of the opinion that the plaintiffs showed that they were entitled to substantial relief, unless barred for reasons hereinafter discussed.

■ Counsel for defendants in error contend that even if plaintiffs had any rights they have lost them because they waited too

long to assert them. On June 11, 1938, the trial court appointed a receiver for the property, including that covered by the fire-insurance policies heretofore referred to, and on that day ordered: "That said receiver give notice in the Gainesville News, the legal organ carrying the advertisements for Hall County, in two separate issues thereof, to all parties concerned, to present to him or this court on or before the 18th day of July, 1938, such claims as they may have against the property described in the original petition in this case, known as the White Sulphur Springs property." This order is referred to in the briefs as a "bar" order. It was admitted that plaintiffs did not present their claims on or before July 18, 1938. At the time the instant suit was brought, the receiver had not sold the property, nor had there been any distribution of any of the assets to any creditors or intervenors. The real plaintiffs, the insurance companies, were non-residents of the State. If the companies received any notice, or were chargeable with any notice of the so-called "bar" order, it was through E. E. Kimbrough Jr., a member of the firm of E. E. Kimbrough & Son, their local agents in Hall County, Georgia. We have set forth in the statement of facts what the testimony shows as to that. If it be conceded that this was sufficient to charge the companies with notice of the pendency of the receivership, it does not show any notice to them of the provisions of the order of June 11, or any knowledge that the property was in the exclusive possession and control of the court through its receiver, so as to make applicable the statement from 53 C. J. 237, § 394, quoted in *Industrial Realty Co.* v. *International Reinsurance Cor.*, 183 *Ga.* 605, 611 (189 S. E. 49), to wit: "Knowledge of the exclusive possession and control of property by a court through its receiver places a claimant of ordinary prudence upon inquiry as to all measures requisite for him to pursue in order to share in the distribution, including the order limiting the time for filing the claim." In the case cited, the so-called bar order required all creditors to assert their claims within four months, and required notice of said order to be published once a month for three months in three different newspapers of general circulation in different cities; and in that case the creditor knew of the pendency of the suit, and it was not claimed that he did not know of the bar order. Besides, the order in that case stated that claims not filed by the time fixed should not share in the funds

held by the receivers. In that case, the order being dated June 28, 1934, and the intervention being filed November 8, 1935, more than sixteen months thereafter, this court declared, two Justices dissenting, that it could not rule that the action of the trial court in denying the intervention was an abuse of discretion.

In *Columbus Iron Works* v. *Sibley,* 164 *Ga.* 121 (137 S. E. 757), the order which was passed on May 22, 1925, limited to July 20, 1925, the time within which creditors might intervene; the order further providing that any claim not so filed within the time so fixed "shall be forever barred and foreclosed from participating in or receiving any share of the assets in the hands of" the receiver. The order also provided that the receiver should publish a notice once a week for two weeks in a newspaper published in the county where the suit was pending. Most of the intervenors were without actual notice of the order or time limit fixed by the order until after it had expired. This court held that the trial court erred in not setting aside the order so far as the intervenors were concerned, all the Justices concurring. Here, as there, the intervenors had no actual notice of the order. The creditors were given two months, lacking two days, in which to file their claims. Here, the time was one month and one week. Whereas in that case most of the intervenors were non-residents of the State, in the instant case all of them were non-residents. There, at the time the interventions were filed, a part of the fund had already been distributed to creditors who had filed their claims within the time limit. Here, none of it had been distributed to creditors. In the case at bar, the order does not, as it did in that case, expressly provide that any claim not filed within the time limit should be forever barred from participating in the assets in the hands of the receiver. In the opinion in the case last referred to, authorities are cited to the effect that a creditor bona fide ignorant of the proceedings had for the distribution of the fund will be allowed to come in and prove his claim against the estate after the time fixed for the filing of his claim.

In 15 C. J. 1437, it is stated: "Although creditors are required by the decree to establish their claims within a time limited, they are not strictly held to the time unless injustice would otherwise be done to other parties;" and in 53 C. J. 237, we find the following pronouncement, which is amply supported by the authorities cited in the notes: "In general, where an order is given for the publi-

cation of a notice of a limitation of the time to file claims, and such notice is duly published, claims not filed within the time specified in the notice are precluded in that proceeding from sharing in the assets. This result is held to follow, however, only where there has been, in the meantime, a final distribution of the funds in the hands of the receiver, based upon claims proven, unless injustice would otherwise be done." We believe that to be good sense, good morals, and good law. The same principle is involved in our Code, § 113-1505, which provides for the notice to creditors to render their accounts to the administrator. It contains a provision that "Creditors failing to give notice within that time lose all rights to an equal participation with creditors of equal dignity to whom distribution is made before notice of such claims is brought to the administrator."

We are of the opinion that the court erred in holding that relief should be denied intervenors because of their delay.

*Judgment reversed. All the Justices concur.*