THE HOME INSURANCE COMPANY v. INGOLD TIRE COMPANY, INC.

No. 7414SC437

(Filed 3 July 1974)

1. **Insurance § 135— fire insurance — security interest in chattels — subrogation**

    Where B-W Acceptance Corporation and defendant entered into an agreement to facilitate the financing of purchases by defendant of merchandise for inventory, B-WAC was to take a security interest in all chattels which it financed for defendant, and defendant agreed to hold the chattels at its risk and to carry insurance thereon, purchase of insurance by B-WAC with its own funds upon defendant's failure to provide insurance was solely for B-WAC's own protection, and plaintiff insurer upon paying B-WAC's loss, was subrogated to the rights of B-WAC against defendant.

2. **Evidence § 29— subrogation receipt — no authentication or introduction**

    In an action to recover sums allegedly due plaintiff as a subrogee, the trial court erred in giving consideration to plaintiff's exhibit which purported to be a subrogation receipt, since the document was not properly authenticated or introduced.

3. **Evidence § 29; Insurance § 135— fire insurance — sufficiency of evidence of loss**

    Where defendant and B-WAC entered into a financing agreement and B-WAC maintained records showing the items shipped to defendant, the amounts owed B-WAC on each item, and the date B-WAC received final payment on each item from defendant, the records standing alone were insufficient to prove the chattels that were destroyed in the fire in question and their reasonable value, since that method of proof failed to take into account that some of the property might have been sold for cash within a day or two prior to the fire and remittance not made to B-WAC, that some had been sold on installment terms, or even that defendant had wrongfully removed the property from the building prior to the fire.

    Judge CAMPBELL dissenting.

APPEAL by defendant from *Clark, Judge,* 4 September 1973 Session of Superior Court held in DURHAM County.

In this civil action, plaintiff attempts to recover sums allegedly due it as a subrogee. Pertinent allegations of the complaint are summarized as follows:

On or about 4 August 1968, defendant entered into an agreement with B-W Acceptance Corporation (B-WAC) entitled "Finance Agreement and Power of Attorney to Expedite

Wholesale Financing." The primary purpose of the agreement was to facilitate the financing of purchases by defendant of merchandise for inventory. Under the terms of the agreement, B-WAC was to take a security interest in all chattels which it financed for defendant; defendant agreed to hold the chattels at its risk and to carry insurance thereon, with a loss payable clause in favor of B-WAC; and, if defendant failed to provide insurance, B-WAC was authorized to obtain insurance and charge defendant for the cost of same.

On various dates between 22 October 1968 and 6 March 1969, numerous chattels, including television sets, stereos, radios, etc., were shipped to and received by defendant at its place of business in Durham. Prior to each shipment the seller issued an invoice setting forth each item and the price; the invoices were delivered to B-WAC with copies to defendant. Thereupon, B-WAC, pursuant to its agreement with defendant and particularly the power of attorney contained therein, executed a promissory note and a financing statement covering each invoice and paid the seller for the chattels.

On or about 11 March 1969, defendant's building and contents were destroyed by fire. Destroyed in the fire were numerous chattels covered by defendant's agreement with B-WAC and the financing statements issued pursuant thereto. At the time of the fire, defendant had no insurance on the chattels insuring the same against the hazard of fire; that defendant had failed to comply with its agreement with B-WAC to carry insurance on said chattels.

Prior to 11 March 1969, B-WAC had taken out an insurance policy with plaintiff, which policy insured only the interest of B-WAC in merchandise in which it had an interest under a conditional sales agreement, trust receipt or other similar form of encumbrance; that said insurance was taken out by B-WAC at its own expense and without stipulations in favor of defendant or conditions of any kind imposing a duty on B-WAC to protect the property for the benefit of defendant; that defendant paid no part of the premiums for said insurance; that the policy covered all merchandise located within the continental United States and Canada in which B-WAC had an interest; that one of the conditions of said policy was that the insurance was to be considered as excess insurance and would not apply or contribute to the payment of any loss until the amount of any other insurance was exhausted.

Because of defendant's failure to provide insurance on the destroyed chattels in favor of B-WAC as agreed, plaintiff had paid B-WAC $12,745.01 to cover B-WAC's loss. Pursuant to the subrogation clause of plaintiff's policy, plaintiff is subrogated to all rights and claims that B-WAC has against defendant. Plaintiff prayed judgment for the amount which it had paid B-WAC, together with interest, attorney fees and costs.

Defendant filed answer denying the material allegations of the complaint and specifically denied that it owes plaintiff anything.

Jury trial was waived and, following a trial, the court entered judgment making findings of fact and conclusions of law as contended by plaintiff and adjudged that plaintiff recover of defendant the sum of $12,744.11, plus interest and costs. Defendant appealed.

*Berry, Bledsoe & Hogewood, P.A., by Louis A. Bledsoe, Jr., and Yates W. Faison III for plaintiff appellee.*

*Edwards and Manson, by Daniel K. Edwards, for defendant appellant.*

BRITT, Judge.

Defendant contends that plaintiff does not have a claim against defendant for the reason that defendant was, at least in effect, an insured under the policy issued by plaintiff. We disagree with this contention.

[1] In *Insurance Co. v. Assurance Co.*, 259 N.C. 485, 487, 131 S.E. 2d 36, 38 (1963), we find: "When a mortgagee purchases with his funds insurance solely for his protection, the insurer, upon payment of the mortgagee's loss as provided in the policy, is subrogated to the rights of the mortgagee against the mortgagor. *Bryan v. Ins. Co.*, 213 N.C. 391, 196 S.E. 345; *Batts v. Sullivan*, 182 N.C. 129, 108 S.E. 511; *Ins. Co. v. Reid*, 171 N.C. 513, 88 S.E. 779; 29A Am. Jur. 807; 46 C.J.S. 183. Where, however, the insurance is procured by the mortgagee pursuant to the authorization and at the expense of the mortgagor, no right of subrogation exists and the amount paid by the insurer must be applied to discharge or reduce mortgagor's obligation to mortgagee. (Citations.)"

The evidence in the instant case showed that the insurance in question was purchased by B-WAC with its funds solely for

its protection, therefore, we think the first rule above stated applies.

Defendant contends the court made numerous errors in the admission of evidence and in its findings of fact and conclusions of law. We think two of the contentions are sufficient to warrant vacating the judgment.

[2]  The first of these relates to a document identified as plaintiff's Exhibit 6, purporting to be a "SUBROGATION RECEIPT," from B-WAC to plaintiff, acknowledging receipt of $12,745.01, and subrogating to plaintiff all rights which B-WAC had against defendant resulting from the fire in question. This document was essential to plaintiff's case and although the record reveals that it was *identified,* the record fails to reveal that it was ever introduced. The record fails to disclose that the document was properly authenticated, therefore, we cannot assume that there was a mere omission in showing that the document was introduced.

Plaintiff argues that the order settling the case on appeal contains a finding that answers the contention in its favor. We disagree. The order provides: ". . . and the Court further finds as a fact that, in reaching the Court's Findings of Fact Nos. 20 and 22, the Court did consider Plaintiff's Exhibit 6, which is referred to in the attached Statement of Case on Appeal, as having been introduced in evidence." We cannot construe the quoted statement as a finding that Exhibit 6 *was* introduced into evidence.

[3]  The second contention of defendant that has merit relates to the method employed by plaintiff to prove B-WAC's loss. We do not think the evidence was sufficient to support the court's findings as to the chattels in which B-WAC had a security interest and that were destroyed by fire.

Plaintiff's evidence tended to show: The seller of the chattels prepared an invoice showing that the chattels were sold to B-WAC in Greensboro and shipped to defendant in Durham. The invoice showed the items sold, the quantity, and the price of each item. B-WAC then prepared a "B-WAC WHOLESALE FLOOR PLAN" document on which was listed in one column the items set forth on the invoice; in an adjoining column headed "RELEASE AMOUNT" were listed the amounts which defendant owed B-WAC on each item; in another column headed "DATE OF RELEASE" an employee of B-WAC wrote in the date each

item was released from the instrument, that date being the date on which B-WAC received payment from defendant. At the bottom of each document was a promissory note covering the total cost of the items listed, plus charges; the note was signed on behalf of defendant by a representative of B-WAC pursuant to the power of attorney.

Over defendant's objections, plaintiff made out its claim by showing the items on each "B-WAC WHOLESALE FLOOR PLAN" sheet that had not been "released" by B-WAC, and the amount of the judgment is the sum total of those items. We perceive several fallacies in this procedure.

The burden was on plaintiff to prove its claim. Plaintiff's claim against defendant is no greater than its legal liability was to B-WAC. Plaintiff was liable to B-WAC for the reasonable value of merchandise in which B-WAC had a security interest and which was *destroyed in the fire*. Under defendant's agreement with B-WAC, defendant was authorized to sell the chattels in which B-WAC had a security interest in the regular course of defendant's "retail trade at their usual retail price for cash or on installment terms." B-WAC's office that served defendant was located in Greensboro. The method used by plaintiff in showing the chattels destroyed in the fire fails to take into account that some of the property might have been sold for cash within a day or two prior to the fire and remittance not made to B-WAC, that some had been sold on installment terms, or even that defendant had wrongfully removed the property, or a part of it, from the building prior to the fire.

We do not hold that the "B-WAC WHOLESALE FLOOR PLAN" documents were inadmissible in evidence, upon a proper showing that they were prepared, and that entries thereon were made, in the regular course of business. However, we do hold that the documents standing alone were insufficient to prove the chattels that were destroyed in the fire and their reasonable value.

For the reasons stated, the judgment is vacated, and, in the exercise of our discretion, we remand this cause to the superior court for a new trial.

New trial.

Chief Judge BROCK concurs.

---

Judge CAMPBELL dissenting:

I dissent for that the evidence did support the findings of fact by the Judge and those facts supported the conclusions of law. I would affirm the trial court.